### PAINE & ALS. *plaintiffs in error, vs.* ROSS.

The town of *W.* when it constituted but one parish, erected a meeting-house; and after several years, divers citizens having in the mean time become members of other parishes, the town, in its municipal capacity raised money to repair the house; which was assessed generally on all the inhabitants. It was holden that this assessment, so far as these citizens were concerned, was illegal.

IN a writ of error brought by the assessors of *Winslow,* to reverse a judgment recovered by *Ross* against them, in an action of trespass, the question was, whether the purpose for which the sum of $463,32 was raised by a vote of the town in 1825, and for which *Ross* was

assessed his proportion, was within the legitimate powers of the town. The trespass consisted in distraining and selling the plaintiff's cow, in *March* 1827, for the nonpayment of the tax.

It appeared from the bill of exceptions, that in the year 1798, the town of *Winslow* erected a meeting house, on a lot of land granted to the town by Col. *Lithgow*, on certain terms not necessary here to be stated, as no question of title to the land was decided. In *Nov.* 1824, the house having no foundation of stone, and being unfinished within, and much dilapidated without, a town meeting was called, "to see if the town will raise money to repair or finish the meeting house in said town ; or whether the town will relinquish to the pew-holders the right to the meeting house lot, upon condition that the meeting house shall be finished, or on any other condition ; or to see if the town will adopt any measures to prevent the meeting house from going to ruin ; and to act and do any thing relative to said subject." This subject was referred to a committee, who reported an estimate of the expense of the exterior repairs of the house, being $463 32, which they deemed it expedient that the town should pay, to fit the house " for religious and town use." This report was accepted, at the meeting in *April* 1825, the money was raised by vote, and a committee appointed to superintend the repairs, with instructions to make any repairs or alterations inside the house, and to finish a room in the south gallery for the transaction of town-business, provided it could be done free of expense to the town.

At a meeting in *Sept.* 1825, the town appointed a committee to give deeds to the purchasers of pews; and subsequently, in 1827, after the repairs were completed, it was voted that all future town meetings should be holden in that house ; where they had all been holden, except two, since its erection.

The whole amount expended in repairing and finishing the house was about twenty three hundred dollars ; of which about seven hundred were raised by voluntary subscription, and the residue by the sale of pews, and by the amount voted, as above, by the town. No part of this sum was assessed on the quakers.

The original plaintiff became a member of a baptist society in *Fairfax,* in 1812, under the Religious-freedom-act of 1811. There

had been no settled minister, nor parish officers, in *Winslow,* nor monies raised by the town for the support of public worship, since the dissolution of the pastoral relation between the town and the Rev. *Joshua Cushman,* in the year 1814. But the town had always chosen and paid a sexton, whose duty it was to take care of the meeting-house and keep the keys; and had paid, from time to time, divers small bills for repairs.

On these facts *Smith J.* before whom the cause was tried on appeal in the court below, ruled that the tax was illegal; to which the assessors filed a bill of exceptions.

*Boutelle,* for the plaintiffs in error, contended that all which had been done respecting the house was of a municipal and not of a parochial character; that the house itself was a fixture upon the land of the town; and that the parish had lost its right to the occupancy by *non user. Milford v. Godfrey* 1. *Pick.* 91. But if the house was the property of the parish, yet the town might well adopt this method to procure for itself a place for the transaction of its ordinary business. As a parish, it might lawfully rebuild the house,—*Wentworth v. Canton* 3. *Pick.* 344,—in which it had already acquired an easement. *Tucker v. Bass* 5. *Mass.* 164.

The remedy, moreover, is misconceived. The action should have been brought against the town; and not against the assessors; whose doings have been in the forms of law, under a vote of the town; *Cochran v. Camden* 15. *Mass.* 302. *Alna v. Plummer* 3. *Greenl.* 88; and who are expressly protected by *Stat.* 1826, *ch.* 337, *sec.* 1, which was enacted prior to the act complained of as a trespass.

Nor is the plaintiff protected by his certificate, under the Religious-freedom-act; for that act was repealed by *Stat.* 1821, *ch.* 135; and at most it only exempted him from the liability to be taxed in *Winslow* for the support of public worship; but not from contributing to all other public burthens.

*R. Williams,* for the defendant in error, argued that the parochial was separated from the municipal character of the town, as soon as any of its inhabitants became members of a different denomination;

and that all the property which the town held in its parochial capacity became thereupon vested in the parish. *Dillingham v. Snow & al.* 3. *Mass.* 276.   5. *Mass.* 547.   *Jewett v. Burroughs* 15. *Mass.* 464.   *Gridley v. Clark & als.* 2. *Pick.* 403.   And the repair of the meeting-house, being a parochial service, no one is bound to do it, who is not of the parish.   *Whittemore v. Smith & al.* 17. *Mass.* 347.   The erection of a room for town business, within the house, does not affect the present case, since it is expressly found to have been done gratuitously.

As to the *Stat.* 1826, *ch.* 337, it applies only to inhabitants of the town or parish, whom the assessors are bound by law to assess. *Gage v. Currier & als.* 4. *Pick.* 399.

MELLEN C. J. delivered the opinion of the Court at the ensuing term in *Somerset.*

It is not necessary in this case to decide or inquire whether the title to the land on which the meeting-house stands is vested in the town of *Winslow,* in their municipal or parochial capacity ; as the title is not in question ; and as the legality or illegality of the tax, which is the subject of complaint, has relation only to the meeting-house standing on the land, and to certain repairs and alterations mentioned in the exceptions.   It seems to be admitted, as well as decided by several of the cases which have been cited, that a meeting-house, though erected by a town consisting of only one parish, is to be considered as belonging to such town in its parochial capacity, and that the expense of its erection and repairs can be legally assessed only on those inhabitants of the town, who are not exempted from taxation in consequence of being members of some other religious society. These general principles are plain, and have been established and recognized by numerous decisions.   *Ross* having become a member of a religious society in *Fairfax,* in the year 1812, in virtue of the act of Massachusetts of 1811, commonly called the " Religious freedom act," is to be considered as still a member of it, though the act was repealed by our legislature in 1821.——The main question then is whether the assessment of the sum of $463,32 was legally made

under the authority of the votes recited in the exceptions; and this question must be decided by the application of legal principles to those votes, and the proceedings under them. In other words, is the assessment legal, on the ground that the room in the southerly end of the meeting-house, which has been prepared and completed as a place for the transaction of the business of the town, and by one of the recited votes appropriated to that purpose, is so far the property of the town or its privilege and easement, as to render the expense of it a proper subject of assessment on all the inhabitants and property of the town?—A town may lawfully raise money for building or purchasing or hiring a town house, and assess and collect it for the purpose of defraying the necessary expense; still the inquiry is whether it has been done, in the case under consideration, for either of those objects, and in such a manner as the law will sanction. The object in view in the arrangements which were made, seems to have been a commendable one; and the exceptions disclose no fact shewing or tending to shew that it was not sought fairly and with pure motives. All the repairs of the meeting-house cost about $2300; of which $700 were voluntarily given; the sale of the pews produced another portion; and the balance, being $463,32 was assessed on the town. It does not appear by the exceptions when the $700 were collected by contribution; probably not until after the vote raising the sum to be assessed. It is important to observe that the committee, in their report accepted in *April* 1825, estimated the expense of repairing the outside of the house, in the manner described by them, at the above sum of $463,32. " Thereupon it was voted to raise and assess the sum of $463,32 to make and complete said repairs." This vote and this sum have no relation to the finishing of any part of the interior; the sum was specially appropriated for another purpose; and one of a purely parochial character. We are not at liberty to view the vote as contemplating any other object; nor could it legally be applied to any other; at least, not to any other than a parochial object. At the same meeting the committee were authorized " to make any repairs or alterations in the inside of the meeting-house, and to fix a room in the southerly gallery to do the town's business in, provided, it shall

be done free from expense to the town." This vote seems to be a direct negative upon the idea that the assessment was designed to defray the expense of the room for the use of the town.

In our investigation of the subject, we have been led to inquire whether the town, in its municipal character, has not, by means of the proceedings under examination, acquired a vested interest in that part of the meeting-house, especially designed for the use of the town, for which the sum assessed on its inhabitants and property at large may be considered as the fair and valuable consideration. But the facts before us will not warrant this construction of the votes and proceedings of the corporation. The warrant for calling the meeting which was holden on the first of *November* 1824, contains no article on the subject ; the article was " to see if the town will raise a sum of money to repair or finish the meeting-house in said town ; or whether the town will relinquish to the pew holders the right to the meeting-house lot, upon condition that the meeting-house shall be finished, or on any other condition ; or to see if the town will adopt any measures to prevent the meeting-house from going to ruin." This article has no relation to any subject, except such as is of a parochial nature ; it does not contemplate any arrangement as to a town room in the meeting-house, or a grant to the town, in its municipal capacity, of a perpetual right to use such room for the purpose of transacting town business in it. On the contrary the vote before alluded to, passed in *April* 1825, at an adjournment of the meeting of *November* 1, 1824, evidently looks forward to the aid of voluntary contributions to defray the expense of the contemplated town room ; and to such aid, or to the fund arising from the sale of the pews, the inhabitants of the town at large stand indebted for the existence and completion of the room. It certainly was not furnished by means of the assessment. Besides, if we could construe the proceedings of the town as a grant from them, in their parochial capacity, to the town in its municipal character, of a privilege or easement of the kind and for the purposes so often mentioned, still as there was no article in the warrant authorizing such votes and proceedings, it could not be sanctioned as a valid grant.

Paine & al. *v.* Ross.

Several other points were discussed in the argument, which we forbear to notice, because the ground on which we place our decision of the cause renders their examination unnecessary ; but there is one circumstance deserving of attention, as being explanatory of the intentions of the town in voting to raise and assess the before mentioned sum of $463 32 ; which is, that the quakers belonging to the town were not assessed for any part of this sum ; and yet it is difficult to assign any satisfactory reason for excluding and exempting them, and including *Ross*, if the assessment was contemplated as an ordinary municipal measure, to defray an expense incurred, or to be incurred, for the benefit of the inhabitants of the town at large.

We perceive nothing erroneous in the record and proceedings before us, and accordingly the judgment must be affirmed.

*Judgment affirmed with costs.*